## Bailey v. Gibson, Appellant.

*Sales—Contract—Fraud—Concealment—Caveat emptor.*

In sales the vendor and purchaser deal at arms' length, each relying on his own skill and knowledge, and each at liberty to impose conditions or exact warranties before giving assent, and each taking upon himself all risks other than those arising from fraud or from the causes against which he has fortified himself by existing conditions or warranties. The exception to this rule exists only in cases where from the relations between the parties some special duty is incumbent on the one to make full and candid disclosure of all he knows on the subject to the other.

Where a person offers to purchase an oil well at a price specified without any qualifications or conditions, and the offer is unconditionally accepted, and the seller is guilty of no fraud or concealment, and the purchaser has full opportunity for knowing the exact condition of the well, the latter cannot deduct from the purchase money a sum which he expended in cleaning the well.

Argued April 28, 1902.     Appeal, No. 125, April T., 1902,

by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1901, No. 499, on verdict for plaintiff in case of J. H. Bailey v. W. E. Gibson. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit to recover the balance of purchase money for oil land.

Rule for judgment for want of a sufficient affidavit of defense. The affidavit of defense was in part as follows:

It is true that the plaintiff was on or about February 19, 1901, the owner of two certain oil wells near Canonsburg, Washington county, Pennsylvania. The defendant had once owned said wells and had sold them to the plaintiff in August, 1898, prior to February 7, 1901, the plaintiff importuned the defendant to repurchase said wells, and the defendant, in the early part of February, went to the wells and examined them, and found that the plaintiff had, during his ownership, allowed the property to get into a bad state of repair, the boiler used in operating the premises being run down to such an extent that it was apparent a new one would soon be needed. The wells were, however, being operated for oil, and the defendant estimated what it would cost to put the property in good condition, and wrote the plaintiff on or about February 5, 1901, offering him $1,650 for the property. In reply to this offer the plaintiff wrote to the defendant from New York a letter dated February 7, 1901, a copy of which is as follows:

"NEW YORK, 2/7, 1901.

"MR. W. E. GIBSON,

"Pittsburg, Pa.

"Dear Billy: Your favor of the 5th just received.

"Your offer of $1,650 for my wells is too low to consider.

"The boiler may be in bad shape, but can be replaced for a new one at not much cost.

"I can't see how drawing water from the creek can add any extra operating expense.

"As I said before, I am anxious to make a sale, but feel the wells are worth more than the figure you offer me.

"As I do not expect to be in Pg. and so cannot watch the property, I would rather have the money invested where I am.

. " Make me another offer, Billy, and we can come to terms.
" Hoping to hear from you soon,

" Very truly yours,

" JUD.

" Address,
     " J. H. BAILEY,
" Per E. H. ROSENSTOCK,
        " 87 Nassau St., N. Y."

Thereupon the defendant wrote to the plaintiff on or about February 9, 1901, a letter in reply to said letter of the plaintiff of February 7, 1901, in which the defendant offered the plaintiff $1,800 for said wells. The copy of a letter set forth in plaintiff's statement of claim as exhibit " A," is believed to be a true copy of said letter of the defendant, but defendant calls upon the plaintiff to produce the original upon the trial of this case. In reply to the defendant's said letter, the plaintiff wrote from New York a letter dated February 13, 1901, accepting defendant's offer, a copy of said letter, excepting the date thereof being exhibit " B " of plaintiff's statement of claim.

The defendant avers that his offer for said property was based upon the fact that the wells were being operated ; that the wells were being operated when the defendant examined the property ; that the defendant supposed and assumed that the wells were being operated when he made said offer for said property ; but that the defendant learned just before said contract of purchase was consummated that the plaintiff had shut down the wells a short time before that ; that the shutting down of the wells impaired their value very largely, because they were of such a nature that when shut down they caved in, this necessitating cleaning out at an expense of a large sum of money ; that the plaintiff had had such an experience with said wells during his ownership, and knew that the shutting down of the wells was likely to result in the caving in of the wells, and would lessen the value of the property by the cost and expense of cleaning out, in case of caving in ; and the plaintiff also knew that the defendant was buying the wells on the basis of their being in operation, and that the defendant would not have offered $1,800 for them if he had known that they had been shut down a few days before.

The defendant, immediately upon learning that the wells had been shut down, became alarmed, fearing this would result in the caving in of the wells, and was unwilling to proceed with the contract unless the plaintiff guaranteed him against the expense and damage which would be caused by such caving in. The plaintiff was out of the state at the time and the defendant considered that quick action was necessary, as every hour's delay meant a greater probability of the caving in of the wells. The defendant at once went to Charles H. Bradley, Jr., of Pittsburg, who had at various times looked after said property for the plaintiff, and who had besought and obtained the defendant's assistance for the plaintiff in cleaning out the wells when they caved in before; and defendant explained the situation to him, and he understood at once the serious danger of loss from shutting down the wells, and at once told the defendant to proceed immediately and take charge of the wells and get them in operation as quickly as possible, and if there was any caving in, he would be responsible for the expense thereof. The defendant acting under this assurance and arrangement, at once ordered and sent to the wells a new boiler, and had it set up, and took prompt action to get the property in working order. At the same time the defendant wrote and mailed to the plaintiff the following letter, dated February 19, 1901, which was received by the plaintiff in due course, to wit:

" February 19, 1901.

"Mr. Judson H. Bailey,
    " 87 Nassau Street,
        " New York City, N. Y.

" Friend Jud. I am in receipt of your favor of the 16th inst., with assignment and transfer orders. I am very sorry that you forgot to tell me, that the wells had been shut down for several days, on account of the boiler giving out. I have, however, sent out a new boiler, but before doing so, I had your friend, C. H. Bradley, Jr., guarantee me against any loss that should be sustained by the wells caving in, when they are pumped off.

" Enclosed please find check for fifteen hundred ($1,500) dollars. We will get everything in running order and the wells pumped in a few days, and in the event that everything

is all right, and they do not cave in, I will forward you check for balance. As I said before, if they should cave in, which is very probable, I will clean them out at your expense.

　　　　　　　　　　　　　　　　" Yours truly,
" Dictated.　　　　　　　　　　　　　W. E. GIBSON."

And the said Charles H. Bradley wrote and mailed to the plaintiff a letter dated February 22, 1901, which the plaintiff received in due course, and of which the following is a copy :

　　　　　　　　　　　　　　　" February 22, 1901.

" MR. J. H. BAILEY,
　　　"Care of E. H. ROSENSTOCK,
　　　　" 87 Nassau St.,
　　　　　" New York, N. Y.

" Dear Sir: Your favor regarding the sale of wells to Mr. Gibson has been received. The arrangement between Mr. Gibson and myself was not a very definite one. I simply stated in case the sale did not take place that I would be responsible for any work he might do in cleaning out the wells so that he might not be the loser. I thought this would be all right as undoubtedly the wells must be cleaned and every day they stand they grow that much worse. It seems Mr. Gibson did not know the wells had been shut down, until Saturday. It probably would have been better to have referred to you but Mr. Gibson was in such a hurry I made the arrangement as stated. I sincerely hope the wells have not caved in and my interference will be pardoned.

" We expect to see you here early this week. When do you expect to come on ?

　　　　　　　　　　　　　　　　" CHARLES."

And later, to wit: on June 1, 1901, in further explanation of the arrangement made between the plaintiff and said Bradley, said Bradley wrote to the plaintiff a letter, which the plaintiff received in due course, a copy of which is as follows :

　　　　　　　　　　　　　　　" June 1, 1901.

" MR. JUDSON H. BAILEY,
　　　" 93 State Street,
　　　　" New York, N. Y.

" Dear Jud: Mr. Gibson has been talking to me regarding the
　　　VOL. XX—28

differences existing between you in relation to payment on the two oil wells at Cannonsburg. While you agreed to sell these wells to Mr. Gibson, he met me in our building in company with Mr. Dunlevy. It seems Mr. Dunlevy had just received a letter from you telling him to close the wells down. As soon as Mr. Gibson saw this he was quite confident that Wilson well would cave in, and stated to me he would not take the wells unless I would guarantee to reimburse him for any expenditures he might make in this direction. I therefore stated to him that he could begin cleaning out the well at once, and in case the sale did not go through, that I would see he was paid for this trouble, knowing the well must be cleaned out at once by some one. No risk was taken in this agreement, as I notified you of same immediately, and told you if it was not satisfactory to so state to Mr. Gibson. Now it seems Mr. Gibson sent you a check in part payment, rehearsing the conversation had with the writer. You were therefore well advised, and if this agreement was not satisfactory, you should have returned his check, as I understand he stated the check was sent under the conditions above outlined, and that you were to receive balance after he had deducted all expenses in cleaning out the well. It was a great mistake of course to shut this well down, but I have nothing to say regarding that. I believe Mr. Gibson has done his best, and that we both are to blame by not having a more clear understanding. You say Gibson was to take the property just as it stood, which is all very well, but when making you payment an explanation accompanied same regarding the caving in of the Wilson well, and you know very well by accepting the check you accept the conditions. I do not think you had better have any trouble with Mr. Gibson, as you can settle it up between you very nicely I think.

"Mr. Gibson states he has written you repeatedly as to progress of cleaning out the well, and that you have not made any comments whatever on same, but have simply asked him for balance of money. He also states that in accepting the check you made some protest, but further than this no new agreement was entered into. I am very sorry I have meddled in this at all, but having advised you promptly of what I did and telling you to notify Mr. Gibson if it was not satisfactory

should in no way make me responsible, although I feel more or less responsible to Gibson. Give this matter your careful attention before acting.

"Very truly yours,

"C. H. BRADLEY, JR."

The defendant avers that having learned that said wells were shut down the defendant would not have proceeded with said purchase, and would have refused to take said property, but for the said arrangement and understanding that the defendant was to proceed with the purchase, take possession of the property, and put it in working order, and in case the wells caved in, the plaintiff was to bear the cost and expense of cleaning them out. And the defendant avers that the said arrangement and understanding had by the defendant with said Bradley was promptly communicated to the plaintiff by said Bradley, and the plaintiff did not disaffirm the same, but on the contrary acquiesced in and confirmed it. And the defendant further avers that upon making said arrangement he sent to the plaintiff $1,500 on account of the purchase price, and stated to the plaintiff that if the wells caved in, he, the defendant, would clean them out at the plaintiff's expense, and that the plaintiff received and accepted this payment of $1,500 with the understanding and upon the condition that in case the wells caved in, they would be cleaned out at his expense; that the plaintiff never returned or offered to return, this payment, but accepted and held on to the same and thereby, as defendant is advised, acceded to the arrangement and condition that he, the plaintiff, was to pay the expenses of cleaning out the wells in case of caving in.

And the defendant avers that upon taking possession of said wells and starting to operate them, he found that one of them had caved in, to wit: the well known as the Wilson well; that defendant had to clean out the same; that defendant proceeded at once under the arrangement with the plaintiff and cleaned out said well; that defendant reported the progress of cleaning out said well to the plaintiff from time to time, and the plaintiff made no objection thereto, until he found that the cost would amount to more than the $300 withheld from the purchase money as aforesaid; that the actual expense and outlay

436 BAILEY *v.* GIBSON, Appellant.

Statement of Facts—Opinion of the Court. [20 Pa. Superior Ct.

of the defendant in cleaning the same out was $448.17, as shown by itemized accounts hereto attached, marked exhibit " A," and that the defendant claims from the plaintiff in this action the sum of $148.17, being the difference between $448.17 and the $300 withheld by defendant out of the purchase money as aforesaid, together with interest upon the sum $148.17 from June 1, 1901.

The defendant denies that the plaintiff accepted said sum of $1,500 in part payment of the purchase price of $1,800 and avers that he accepted said $1,500 with the understanding and upon the conditions hereinabove set forth.

The court made absolute a rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*C. M. Thorp*, for appellant.—The defendant upon learning, while the contract still remained executory, that the plaintiff had materially injured, if not destroyed, the wells, was not bound to proceed with the contract: Lovering v. Buck Mountain Coal Co., 54 Pa. 291; Seipel v. International Life Ins. & Trust Company, 84 Pa. 47.

The defendant had the right to send a part of the purchase money and impose a condition upon its acceptance, to wit: that the plaintiff must pay the expense of cleaning out the wells: Washington Natural Gas Co. v. Johnson, 123 Pa. 593; Christman v. Martin, 7 Pa. Superior Ct. 568.

*George B. Kennedy*, with him *Patterson, Sterrtee & Acheson*, for appellee.

OPINION BY BEAVER, J., May 22, 1902:

The contract upon which the plaintiff relies in this case was entered into and consummated entirely by correspondence. Plaintiff wrote defendant from New York, where he lived, February 7, 1901, evidently in reply to a letter of the latter dated February 5: " Your offer of $1,650 for my wells is too low to consider. . . . Make me another offer and we can come to terms." Thereupon defendant wrote, February 9: " In reply, beg to say that I went over this matter very care-

fully "—speaks of the old boiler and the cost of a new one and of the cost of pumping water from the creek and ends by saying: " I did think I could not raise my offer any; but, after thinking the matter over, I will give you $1,800 cash for the property just as it is." This was followed, on February 13, by a letter containing an unconditional acceptance of the offer and enclosing the papers relating to the title and an assignment to be filled out and returned. The contract was thus complete—an unconditional offer by defendant and an unqualified acceptance by plaintiff—although the formal written evidence of it—the assignment—was not then executed.

Defendant took possession of the property, although as he alleges in his affidavit not until he had consulted " Charles H. Bradley, Jr., of Pittsburg, who had at various times looked after said property for the plaintiff and who had besought and obtained the defendant's assistance for the plaintiff in cleaning out the wells when they caved in before; and defendant explained the situation to him and he understood at once the serious danger of loss from shutting down the wells and at once told the defendant to proceed immediately and take charge of the wells and get them in operation as quickly as possible; and, if there was any caving in, he would be responsible for the expense thereof."

Defendant imposed no conditions and exacted no warranties from the plaintiff. He consulted Bradley, who is not alleged to be the agent or representative of the plaintiff and who made no representations as to the plaintiff's willingness to make any allowance for cleaning out the wells in the event of their having caved in. Relying, therefore, upon Bradley's personal undertaking to be responsible for the expense of cleaning out the wells, defendant " at once ordered and sent to the wells a new boiler and had it set up and took prompt action to get the property in working order." Defendant subsequently sent plaintiff a check for $1,500, reciting the facts above referred to, accompanied with the statement: " We will get everything in running order and the wells pumped in a few days and, in the event that everything is all right and they do not cave in, I will forward you check for balance. As I said before, if they should cave in—which is very probable—I will clean them out at your expense." The payment on account is not conditioned

in any way upon the assent of the plaintiff to what is contained in the letter enclosing the check, and we cannot see that the use of the check can, under the circumstances, be construed into such an assent.

The transaction, as disclosed in the correspondence, shows no fraudulent conduct on the part of the plaintiff. It may be admitted that the defendant was mistaken as to the condition of the wells but it does not appear that the plaintiff, by representation or silence when he should have spoken, contributed in any way to the mistake. The general rule, therefore, as laid down on Benjamin on Sales (6th Am. ed.), 367, applies : " In sales the vendor and purchaser deal at arms' length, each relying on his own skill and knowledge and each at liberty to impose conditions or exact warranties before giving assent and each taking upon himself all risks other than those arising from fraud or from the causes against which he has fortified himself by existing conditions or warranties. . . . . The exception to this rule exists only in cases, where from the relations between the parties some special duty is incumbent on the one to make full and candid disclosure of all he knows on the subject to the other."

There is no specific allegation of fraud in the affidavit of defense. The defendant had full opportunity for knowing the exact condition of the wells which he purchased. He made an unconditional offer " for the property just as it is," which was accepted. He is clearly liable for the balance of the purchase price. We must hold, as did the court below, that the affidavit of defense is insufficient.

Judgment affirmed.